Cite as 2022 Ark. App. 115

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-21-52

|  |  |
|---|---|
| COLEMAN BASS CONSTRUCTION, LLC; AND BIG HAMMER CONTRACTORS, LLC<br><br>APPELLANTS<br><br>V.<br><br>THE CITY OF BENTONVILLE; CITY COUNCIL OF THE CITY OF BENTONVILLE; AND STEPHANIE ORMAN, IN HER CAPACITY AS MAYOR<br><br>APPELLEES | Opinion Delivered March 9, 2022<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-19-2102]<br><br>HONORABLE DOUG SCHRANZ, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Keith Coleman and David Bass, owners of Coleman Bass Construction, LLC, and Big Hammer Contractors, LLC (collectively, "CBC"), appeal the Benton County Circuit Court order affirming the Bentonville City Council's ("City's") adoption of the resolution condemning a structure on CBC's property located at 1800 NW Mystic Avenue. We affirm.

### I. *Relevant Facts*

On April 28, 2017, CBC obtained a permit from the City to build a house on a lot located at 1800 NW Mystic Avenue. In August, a foundation wall collapsed, leaving debris on the property. The neighbors complained, and the foundation was repaired in December.

Progress on construction slowed due to foundational issues. After more complaints, on May 18, 2018, Bentonville code enforcement officer Darren Warren issued a notice of violation informing CBC that weeds and grass eight inches high or higher were growing on the property, and failure to correct the violation within ten days may result in an administrative citation or referral to the city attorney. On May 31, another notice of violation was issued, informing CBC of the weed and grass problem and additionally citing "unsightly or unsanitary conditions." The City specifically requested that CBC mow the grass; and remove all lumber scraps, lumber with rusty nails, unused forms, concrete debris, and any trash that resulted from the repair of the wall. Again, CBC was informed that failure to correct the violations may result in an administrative citation or referral to the city attorney.

In April 2019, project engineer Don Johnston to advise Coleman how to get the structure up to code and ready for inspection. On April 25, five months after CBC's building permit had expired, the City issued another notice of violation, informing CBC of unsightly or unsanitary conditions. The notice specifically provided that

> [t]he City of Bentonville is moving forward with condemnation of the uncompleted home on this property. To address this issue you need to do the following. 1. You must immediately clean up all old construction debris on this site. 2. You must immediately pull a new building permit and start construction on this property. 3. Keep the property clean of excess debris and tall grass.

Coleman reapplied for the building permit on April 30. On May 28, in Resolution 5-28-19E, the City declared the incomplete structure on 1800 NW Mystic Avenue a nuisance and set a hearing for July 23 to allow CBC to appear and present evidence to avoid condemnation.

2

The resolution was posted at the construction site. Bass was served with the notice of violation by certified mail at his home address, and his wife, Britney, accepted delivery on May 31. Coleman's notice was also sent by certified mail to his home address but was returned on June 16.

Coleman appeared at the July 23 meeting and spoke against condemnation of the structure. The Bentonville City Council adopted Resolution 7-23-19A, condemning the structure as a nuisance. The City informed CBC that if the conditions were not abated within thirty days, then the City would remove the conditions that led to condemnation. On August 21, CBC filed its notice of appeal in the circuit court pursuant to Arkansas District Court Rule 9(f).

On February 3, 2020, CBC moved for summary judgment, arguing that notice was inadequate because Resolution 5-28-19E did not specifically describe the violating conditions of the property, CBC was not given the opportunity to cure to the violations that led to condemnation, and there was no proof that service was completed as required by Bentonville Property Maintenance Code sections 107 and 108. The City responded, referring the circuit court to the record containing certified-mail receipts, the return card for Bass signed by his wife, and the envelope showing that Coleman had not accepted the mailing. Additionally, the City attached Darren Warren's affidavit to its response, stating that he not only sent a copy of the resolution to Bass and Coleman by mail, but he also posted the resolution at the property. The City asserted that the "to wit" language in Resolution 5-28-19E advising CBC that the collapsed foundation wall "has never been repaired or completed and is filled with

3

debris constituting a hazard" is sufficient notice of the description of the violation required by section 107.2. The City also noted that Coleman appeared at the May 28, 2019 city council meeting.

The circuit court ruled that the City had followed the service procedures set forth in Bentonville Property Maintenance Code sections 107 and 108, and the notice and the statement of defects were adequate.

A bench trial on the remaining issues took place on August 19, 2020. Lance Blasi, the Bentonville chief building inspector, testified that by December 14, 2017, CBC had repaired the partially collapsed foundation, and he approved the repair. Blasi stated that the neighbors complained about the construction debris and tall grass, and the May 31, 2018 violation notice directed CBC to "remove all lumber from the site that has rusted nails protruding, unused forms, lumber scraps, concrete, debris in repaired wall and any other items." Blasi read from the April 25, 2019 notice of violation that instructed CBC to clean up all construction debris; pull a new permit and start construction; and keep the property clean of debris and tall grass. Blasi recalled that on June 12, Don Johnston informed him that the foundation-wall work was ready for inspection, and Blasi testified that he inspected the foundation wall and approved it. Blasi stated that on July 23, before the hearing, Blasi inspected the site and that the only difference was that there was a tractor on the property, and CBC had done some grading, "but there continued to be a lot of unsightly debris,

concrete and scrap metal in the rear yard." He explained that the main problem with the site was the slow construction progress and that construction was "stagnant."[1]

Johnston testified that he was called in to inspect the collapsed foundation wall in August 2017 and discovered that it was shoddily constructed and had to be torn out and redone. He approved the repair in December; however, the wall was in the setback and a section had to be cut off, which was done in late spring or early summer in 2018. Johnson testified that about two weeks before the circuit court trial, he inspected the foundational structure, and it was acceptable and structurally sound.

Coleman testified that there were good reasons for the delay in repair of the foundation, including that Johnston was out of the country, the repair was particularly difficult, they had a hard time finding someone to do the work, and the neighbors refused to allow CBC onto their property to access the structure. Coleman explained that he was unaware that the permit expired in November 2018. When he realized this, he reapplied (on April 30, 2019), and CBC received the new building permit in early June. Coleman recalled that from the spring of 2018 to April 2019, "there was a lot of down time" trying to figure out how to do the additional work needed. Coleman testified that after receiving the new permit, he went to the site to talk to a plumber, and that is when he saw the notice of the July meeting posted on the property. At that point, the slab was only partially constructed, and framing had not begun. Coleman put a hold on plumbing work due to financial

---

[1]Later, at the end of cross-examination, Blasi answered yes to counsel's question, "But would you agree on July 23, 2019, that the site was clean and neat and structurally sound?"

5

concerns and decided to wait "until [he found] out what happens in July." Coleman testified that the grass had been a problem in the spring, but by July 23, he had hired a groundskeeper to mow every five days. Coleman stated that he went to the meeting on July 23 and offered photos of the property, but "no one really looked at them." Later, Coleman testified that there was a pile of debris not shown in the photo, but he testified that it had been removed within the thirty days after July 23. James Spillman testified that during August 2019, he worked for CBC cleaning up the property and removed the debris during that time.

After the hearing, the circuit court issued a letter order affirming the City's adoption of the resolution to condemn the structure on the property and found as follows: The building permit was issued in April 2017, and in August the foundation collapsed but was repaired. The City passed Resolution 5-28-19E ordering CBC to show cause why the property should not be condemned. Resolution 7-23-19A was a final appealable order "directing that if the nuisance at the subject property is not abated within thirty days, the City shall proceed to remove the conditions leading to the declaration of the nuisance." CBC was properly served with notice of the proceedings and afforded an adequate opportunity to cure the defects. Coleman was given a clear description of the reason for the hearing and the conditions of the property that did not comply with the city code and participated in the July 23 meeting, at which CBC presented no evidence of "any plan . . . to proceed with construction nor to correct the defective condition noted in the City Council Resolution." CBC's testimony that whether the conditions of the property that led to condemnation had been remedied was unclear, and the court described CBC's efforts to clean up the property

as "next to none." Moreover, the court found that it was not clear when CBC attempted to remedy the issues or if it was during the allotted time to do so.

CBC timely filed the notice of appeal.

II. *Discussion*

The standard of review on appeal in a civil bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Robinson v. Murphy*, 2020 Ark. App. 293, at 3, 601 S.W.3d 450, 452. A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.* Facts in dispute and determinations of credibility are solely within the province of the fact-finder. *Id.*

CBC's first argument challenging the finality of Resolution 7-23-19A is two-fold. First, CBC asserts that the July 23, 2019 resolution is not a final, appealable order because it allows thirty days to rehabilitate the property to avoid condemnation; thus, the rights of the parties to the property were not resolved in Resolution 7-23-19A. Second, CBC contends that the resolution's lack of findings regarding the condition of the property left the question of whether CBC had cured the nuisance violations unresolved. CBC's point is not well taken.

The circuit court found that Resolution 7-23-19A "was a final action of the City Council directing that if the nuisance at the subject property is not abated within 30 days, the City shall proceed to remove the conditions leading to the declaration of the nuisance." A final order is one that dismisses the parties, discharges them from the action, or concludes their rights to the subject matter in controversy. *Jacobs v. Collison*, 2016 Ark. App. 547, at 2,

7

505 S.W.3d 254, 255. Resolution 7-23-19A declared that the structure be condemned as a nuisance and informed CBC that the City was authorized to remove the materials and equipment left on the property if CBC has not done so within thirty days. There is no question of CBC's rights regarding their property: the building materials, equipment, and debris left at 1800 NW Mystic Avenue—the nuisance condition—belonged to CBC, and CBC had the right to remove them from property for thirty days following the order. After thirty days, the City of Bentonville is allowed by law to dispose of the nuisance conditions that led to the condemnation. CBC likens the instant case to *McGann v. Pine Bluff Police Department*, 334 Ark. 352, 974 S.W.2d 462 (1998), in which our supreme court held that the Pine Bluff City Civil Service Commission's order was not final and appealable because the Commission failed to make the required findings regarding the existence of certain preconditions necessary to reinstate McGann in his job. In the instant case, there were no preconditions in Resolution 7-23-19A that had to be met before the rights to the building materials and debris could be determined. The circuit court did not clearly err in determining that Resolution 7-23-19A is a final, appealable order.

CBC's second point on appeal is that Resolution 5-28-19E failed to give proper notice of the specific code violations at issue and that they were not given an opportunity to cure the conditions. We disagree.

Section 108.3 of the City's Property Maintenance Code provides that

> [w]henever the code official has condemned a structure or equipment under the provisions of this section, notice shall be posted in a conspicuous place in or about the structure affected by such notice and served on owner or the person or

8

persons responsible for the structure or equipment in accordance with Section 107.3. The notice shall be in the form prescribed in Section 107.2.

Bentonville, Ark., Property Maintenance Code § 108.3, http://www.bentonvillear.com/DocumentCenter/View/398/Property-Maintenance-Code-PDF?bidId=.

Sections 107.2 sets forth that notice shall:

1.      Be in writing;

2.      Include a description of the real estate sufficient for identification;

3.      Include a statement of the violation or violations and why the notice is being issued; and

4.       Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.

*Id.* § 107.2.

Section 107.3 provides that notice is properly served if a copy of the resolution is:

1.      Delivered personally; or

2.      Sent by certified or first-class mail addressed to the owner at the last known address; or

3.      If the notice is returned showing that the letter was not delivered a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice.

*Id.* § 107.3.

Darren Warren stated in his affidavit that he successfully notified Bass by certified mail, and the receipt included in the record confirms his statement. Warren also stated that Coleman's notice of Resolution 5-28-19E was returned and that notice was served by posting

the resolution on the property. The circuit court's finding that notice was properly given in accordance with the code requirements is not clearly erroneous.

The circuit court also found that Resolution 5-28-19E provided the exact conditions on the property located at 1800 NW Mystic Avenue that were in violation: the collapsed foundation, the unfinished construction, and building debris. We agree. Resolution 5-28-19E specifically sets forth that the structure located at 1800 NW Mystic Avenue was declared a nuisance because of "a foundation which partially collapsed in August of 2017 and has never been repaired or completed and is filled with debris constituting a hazard." Moreover, the resolution clearly states that "[a] hearing is set for July 23, 2019 at 6:00 p.m. regarding the property described in Section 1. . . . The property owner may appear at the hearing and provide evidence to the Council regarding the condition of the property and why it should not be condemned." CBC had eight weeks before the July 23 hearing to correct the conditions that caused the City to declare the structure a nuisance and avoid condemnation. Moreover, it appears that despite the plain language of Resolution 7-23-19A that the structure was officially condemned and the thirty days after the resolution was to be used to remove CBC's property from 1800 NW Mystic Avenue (and not remedy the nuisance conditions), the circuit court also accepted and considered evidence of CBC's effort to abate the nuisance in the thirty days *after* Resolution 7-23-19A was adopted.[2] We find no error in

---

[2]Resolution 7-23-19A informed CBC that the structure on the property at 1800 NW Mystic Avenue "is hereby declared to be and condemned as a nuisance." The resolution further states that "[i]f the conditions *resulting in the property being declared a nuisance* are not abated within 30 days, the City shall proceed to remove the conditions *leading to this nuisance*

10

the circuit court's determination that notice was properly given and that CBC was afforded an opportunity to abate the nuisance.

CBC's final point challenges the circuit court's finding that the property was not in compliance with the code within the allotted thirty days after July 23. As we discussed, the final allotment of time to bring the structure up to code was between May 28 and July 23; however, even considering testimony and evidence of CBC's efforts to abate the nuisance in the thirty days after July 23, the circuit court found that CBC had not proved that the conditions had been remedied. The court heard Blasi's testimony that the problems with this structure had been going on since August 2017 and Blasi's explanation that although the foundation had been repaired by June 12, 2019, it had never been completed, and progress on the work site was "stagnant." The court heard Coleman's testimony that he halted construction in June 2019 to wait and see how the July meeting went. Additionally, Blasi testified that CBC's July 2 photographs of the site show that work was taking place, but "it's hard to determine what exactly is going on in this picture." Blasi testified that from CBC's photographs taken July 23, it looked like the site was in compliance; however, Blasi explained that on July 23 before the meeting, he inspected the site and testified that CBC had done some grading, "but there continued to be a lot of unsightly debris, concrete and scrap metal in the rear yard." Coleman testified that he had cleaned up the debris after July

_and condemnation_ as allowed by law." (Emphasis added.) The language regarding avoiding condemnation is set forth in Resolution 5-28-19E.

23 and that he had hired a groundskeeper to mow every five days. A CBC employee testified that he had helped clean up the property sometime during August 2019.

The circuit court considered Coleman's testimony that CBC had made "some" effort to clean up the property but found that the "effort of Petitioners to remedy the defects or violations was pursued with no more vigor than their efforts to construct the improvements on the subject property. To be clear, their efforts were next to none." The circuit court also found that it was unclear whether CBC had attempted to bring the structure up to code during the thirty-day period after July 23. Giving deference to the circuit court to weigh the evidence and testimony and judge the credibility of the witnesses, we do not have a firm conviction that a mistake has been committed. The circuit court did not clearly err by affirming the City's condemnation of the structure located at 1800 NW Mystic Avenue.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Taylor Law Partner, LLP*, by: *Nick Mote* and *Rick Woods*, for appellants.

*Clark & Spence*, by: *George R. Spence*, for appellees.